IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON SIMS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-00010-N |
| | § | |
| DALLAS INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

# **MEMORANDUM OPINION & ORDER**

This Order addresses Defendant Dallas Independent School District's ("DISD") motion to dismiss [12]. Because Plaintiffs Jason and Brandren Sims have failed to state a claim for entity liability, the Court grants the motion.

## I. Sharla Sims' Death and the Resulting Litigation

This case arises out of the death of Sharla Sims in January 2021.[1] Sims was a special education teaching assistant at H. Grady Spruce High School in Dallas, Texas. Pls.' Am. Compl. ¶¶ 6–7 [8]. While in the classroom, Sims was attacked by a special education student (the "Student") described as a "very large 17 year old male with significant behavioral and learning disabilities." *Id.* at ¶¶ 8–9. The Student, "with the full force of his body," pushed Sims "up against and over a free-standing bookcase at an awkward angle." *Id.* at ¶ 11. Sims immediately went to the nurse's office for treatment and subsequently

---

[1] For purposes of this Order, the Court accepts the well-pleaded allegations of the complaint as true.

MEMORANDUM OPINION & ORDER – PAGE 1

went home for the weekend. *Id.* at ¶ 13. Her condition eventually worsened, and "she felt a sharp pain in her abdomen." *Id*. at ¶ 16. After calling 911, Sims was transported to the hospital, where she was diagnosed with Type A Aortic Dissection. *Id.* at ¶ 23. The tear in her main artery had caused "extensive internal bleeding." *Id.* Physicians attempted to surgically repair her aorta, but Sims died a few hours after surgery. *Id.* at ¶¶ 26–27.

Sims' sons, Jason and Brandren Sims, brought this suit on behalf of themselves and their mother's estate. Plaintiffs assert a single cause of action against DISD under 42 U.S.C. § 1983 for violating Sims' Fourteenth Amendment right to bodily integrity. DISD now moves to dismiss this action.

## II. RULE 12(b)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R.*

*Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. THE COURT GRANTS THE MOTION TO DISMISS

DISD argues that the Court should dismiss this case because (1) Plaintiffs fail to state a violation of Sims' substantive due process rights and (2) Plaintiffs fail to state a claim for entity liability. Def.'s Mot. Dismiss 1–2. Because Plaintiffs have not shown entity liability, the Court will not address whether they have stated a constitutional violation.

#### A. *Monell* Liability Standard

Section 1983 does not permit vicarious liability for municipalities.[2] A "municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) (emphasis in original). Municipality or corporate liability under section 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving

---

[2] Though *Monell* spoke in terms of "municipality," the same principles apply to other governmental subdivisions, including school districts. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1244 (5th Cir. 1993).

MEMORANDUM OPINION & ORDER – PAGE 3

force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). If plaintiffs do not sufficiently plead all three elements, they run the risk of collapsing their claim into one of *respondeat superior* liability. *Id.* at 580.

There are two ways of defining an "official custom or policy" for the purposes of *Monell* liability:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). In Texas, the final policymaker for a school district is the Board of Trustees. TEX. EDUC. CODE § 11.051; *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 613 n.6 (N.D. Tex. 2017) (citing *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)).

### B. Plaintiffs Have Not Identified an Official Custom or Policy

Plaintiffs' theory of liability relies on the actions of DISD's Admissions, Review, and Dismissal ("ARD") Committee, which Plaintiffs allege "is an official fact-finding body of the DISD with full authority to implement courses of action and safeguards related to special education students." Pls.' Am. Compl. ¶ 38. Plaintiffs allege that the ARD

Committee held a meeting in October 2020, months before the attack, to develop a Behavioral Intervention Plan ("BIP") for the Student. *Id.* at ¶¶ 38–40. The BIP "noted that the Student had shown physical aggression towards two teaching assistants since the beginning of the school year," but the ARD Committee ultimately decided to keep the Student in a classroom setting. *Id.* at ¶¶ 40, 45.

These allegations do not sufficiently state an official custom or policy of DISD's Board of Trustees. The complaint relies on the actions of the ARD Committee, but Plaintiffs have not identified a state or local law permitting the Board to delegate official policymaking authority to the Committee. *See A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1000 (S.D. Tex. 2014) ("But missing from plaintiffs' complaint is any cite to state or local law permitting HISD's Board of Trustees to delegate final policymaking authority to the identified School Officials."). Nor have Plaintiffs alleged facts showing that DISD delegated such power, as the ability to implement decisions does not constitute official policymaking authority. *Rivera v. Houston I.S.D.*, 349 F.3d 244, 248 (5th Cir. 2003) (distinguishing decision-making authority from final policymaking authority).

Plaintiffs' reliance on an ARD Committee meeting held after the attack also fails. Plaintiffs allege that the Committee met four days after Sims' death to discuss "what action would be taken with regard to the Student." Pls.' Am. Compl. ¶ 60. A DISD representative[3] allegedly attended the meeting and stated that the Student "could not be

---

[3] Plaintiffs' response brief attempts to supplement their complaint with the identity of the representative and allegations that she "acted on behalf of and with the full authority of the DISD School Board as the Attorney for the School Board." Pls.' Resp. Br. 3–4 [14]. But the Court declines to consider any allegations not included in the complaint. *See*

separated from other students because that would be seclusion," and the "least restrictive environment had to be around peers, because he had not been physically aggressive towards peers." *Id.* at ¶ 64. Plaintiffs allege that this statement is evidence of the Board's policy that "[a]s long as a special education student's violent conduct is related to or a manifestation of their disability, the student will not be disciplined and will be allowed to remain in the presence of students and teachers regardless of any concern for the safety of other people." *Id.* at ¶ 65. But these allegations do not show an official Board policy. Indeed, Plaintiffs have not alleged that the Board *officially* adopted a policy consistent with the representative's statement, that the Board delegated policymaking authority to the representative, or that the representative had communicated with or sought approval from the Board to even make the statement. *See id.* at ¶¶ 64–68.

Finally, the complaint does not establish a practice so widespread as to constitute a custom that fairly represents Board policy. Plaintiffs cite to only one prior incident involving a student with a history of aggressive behavior, Pls.' Am. Compl. ¶¶ 78–83, which is insufficient to establish a custom under section 1983. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) ("Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.") (internal citation omitted); *Henderson v. Killeen Indep. Sch. Dist.*, 2013 WL 6628630, at *3 (W.D. Tex. 2013) ("Two

---

*Sunderland v. Chavez*, 2023 WL 2185713, at *5 n.5 (N.D. Tex. 2023) ("A party cannot supplement his pleadings in his response to a motion to dismiss.").

MEMORANDUM OPINION & ORDER – PAGE 6

isolated incidents clearly do not constitute a pattern of unconstitutional conduct sufficient to hold [the school district] liable under § 1983."). Plaintiffs have thus failed to establish an official custom or policy under *Monell*.

### C. Plaintiffs Have Not Shown Ratification

Section 1983 plaintiffs may also establish entity liability under the ratification theory. If "the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality." *Torres v. City of Houston*, 2012 WL 6554157, at *3 (S.D. Tex. 2012) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Under the ratification theory, a plaintiff must allege that the official policymaker "affirmatively approved both a subordinate's decision *and* the unconstitutional basis for it." *Torres*, 2012 WL 6554157, at *3 (emphasis in original) (citing *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755–56 (5th Cir. 2009)).

Here, Plaintiffs allege that DISD ratified the ARD Committee's October 2020 decision when, after the attack, the Committee removed the Student's disciplinary suspension from his record and allowed him to remain in a classroom setting. Pls.' Resp. Br. 3–4 [14]. But, again, Plaintiffs improperly focus on the actions of the ARD Committee rather than the DISD Board. Plaintiffs have not alleged an action by the Board itself ratifying the October 2020 decision.[4] And the attendance of the representative, who Plaintiffs have not alleged had policymaking authority, does not constitute an action by the

---

[4] Plaintiffs must also show that the October 2020 decision was unconstitutional. But for the purposes of this Order, the Court does not address this issue.

MEMORANDUM OPINION & ORDER – PAGE 7

Board.  Accordingly, the Court concludes that Plaintiffs have not stated a plausible claim for entity liability under the ratification theory.

## CONCLUSION

Because Plaintiffs have not stated an official policy or custom sufficient to establish entity liability, the Court grants DISD's motion to dismiss.  The Court grants Plaintiffs leave to amend their complaint within thirty (30) days of the date of this Order.  If Plaintiffs do not so amend, the Court will dismiss their claims with prejudice without further notice.

Signed July 26, 2023.

_____
David C. Godbey
Chief United States District Judge