IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JASON SIMS, *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> DALLAS INDEPENDENT SCHOOL § <br> DISTRICT, § <br> § <br> Defendant. § | Civil Action No. 3:23-CV-00010-N |

# MEMORANDUM OPINION & ORDER

This Order addresses Defendant Dallas Independent School District's ("DISD") motion to dismiss Plaintiffs' Second Amended Complaint [18]. Because Plaintiffs Jason and Brandren Sims have failed to state a claim for entity liability, the Court grants the motion.

## I. Sharla Sims' Death and the Resulting Litigation

This case arises out of the death of Sharla Sims in January 2021.[1] Sims was a special education teaching assistant at H. Grady Spruce High School in Dallas, Texas. Pls.' Second Am. Compl. ¶¶ 6–7 [17]. While in the classroom, Sims was attacked by a special education student (the "Student") described as a "very large 17 year old male with significant behavioral and learning disabilities." *Id.* at ¶¶ 8–9. The Student, "with the full force of his body," pushed Sims "up against and over a free-standing bookcase at an

---

[1] For purposes of this Order, the Court accepts the well-pleaded allegations of the Second Amended Complaint as true.

MEMORANDUM OPINION & ORDER – PAGE 1

awkward angle." *Id.* at ¶ 11. Sims immediately went to the nurse's office for treatment and subsequently went home for the weekend. *Id.* at ¶ 13. Her condition eventually worsened, and "she felt a sharp pain in her abdomen." *Id*. at ¶ 15–16. After calling 911, Sims was transported to the hospital, where she was diagnosed with Type A Aortic Dissection. *Id.* at ¶ 23. The tear in her main artery had caused "extensive internal bleeding." *Id.* Physicians attempted to surgically repair her aorta, but Sims died a few hours after surgery. *Id.* at ¶¶ 26–27.

Sims' sons, Jason and Brandren Sims, brought this suit on behalf of themselves and their mother's estate. Plaintiffs assert a single cause of action against DISD under 42 U.S.C. § 1983 for violating Sims' Fourteenth Amendment right to bodily integrity under the state created danger and ratification theories of entity liability, respectively. This Court previously dismissed Plaintiffs' Amended Complaint for failure to state a claim for entity liability. Order (July 26, 2023) [16]. DISD now moves to dismiss Plaintiffs' Second Amended Complaint.

## II. RULE 12(b)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). A viable complaint must include "enough facts to state a claim to relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. THE COURT GRANTS THE MOTION TO DISMISS

Plaintiffs allege the Student Code of Conduct of DISD "was the moving force behind the DISD's Admissions, Review, and Dismissal ("ARD") Committee decision on October 20, 2020, to keep the special education student in the classroom with Ms. Sims." Pls.' Second Am. Compl. ¶ 41. In its motion to dismiss, DISD argues that the Court should dismiss this case because (1) Plaintiffs fail to state a claim for entity liability and (2) Plaintiffs fail to state a violation of Sims' substantive due process rights. Def.'s Mot. to Dismiss 1–2. Because Plaintiffs have not plausibly alleged entity liability, the Court will

not address whether the Second Amended Complaint states a violation of Sims' constitutional rights.

### A. Monell Liability Standard

Section 1983 does not permit vicarious liability for municipalities.[2] A "municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) (emphasis in original). Municipality or corporate liability under section 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694); *see also Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021). If plaintiffs do not sufficiently plead all three elements, they run the risk of collapsing their claim into one of *respondeat superior* liability. *Id.* at 580.

There are two ways of defining an "official custom or policy" for the purposes of *Monell* liability:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be

---

[2] Though *Monell* spoke in terms of "municipality," the same principles apply to other governmental subdivisions, including school districts. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1244 (5th Cir. 1993).

MEMORANDUM OPINION & ORDER – PAGE 4

> attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)).  When a plaintiff has alleged liability based on an official policy, "the plaintiff must show, among other things, either (1) that the policy *itself* violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers 'with 'deliberate indifference' as to its known or obvious consequences'" of constitutional violations.  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)) (emphasis in original); *Piotrowski*, 237 F.3d at 579.  In Texas, the final policymaker for a school district is the Board of Trustees.  TEX. EDUC. CODE § 11.051; *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 613 n.6 (N.D. Tex. 2017) (citing *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)).

### B. Plaintiffs Have Identified an Official DISD Policy

The Court previously dismissed Plaintiffs' Amended Complaint in part for failure to identify an official custom or policy of DISD's Board of Trustees under *Monell*.  Order (July 26, 2023) [16].  Plaintiffs may demonstrate an official policy by alleging a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by" the DISD Board of Trustees (the "Board").  *Johnson*, 958 F.2d at 94; *Mohamed*, 252 F. Supp. 3d at 613 n.6.  In their Second Amended Complaint, Plaintiffs allege that an official DISD policy "regarding the appropriate discipline of students who exhibit aggressive

behavior is contained in the DISD *Student Code of Conduct* which is *officially* adopted by the Dallas ISD Board of Trustees," and "addresses the subject of disciplinary actions with regard to Special Education Students." Pls.' Second Am. Compl. ¶¶ 31–32 (emphasis in original). DISD does not contest that the Student Code of Conduct reflects a policy of the DISD Board of Trustees regarding disciplinary actions involving students with disabilities. *See* Def.'s Mot. to Dismiss 11 ("[I]t is the Board's policy, as reflected in the Student Code of Conduct . . . ."). Accordingly, Plaintiffs have identified the Student Code of Conduct as the relevant policy.

### C. Plaintiffs Have Not Shown the Official Policy is Unconstitutional or Was Promulgated With Deliberate Indifference to Known Consequences

A policy must be either unconstitutional itself or else adopted with deliberate indifference to the obvious fact that constitutional violations would occur. *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Johnson*, 379 F.3d at 309). "To base deliberate indifference from a single incident, 'it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy . . . .'" *Blanchard-Daigle v. Geers*, 802 F.App'x. 113, 116 (5th Cir. 2020) (quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003)). The description of a policy and its relation to a constitutional violation "cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). Plaintiffs have not alleged sufficient facts to show that the Board's policy, as adopted in the Student Code of Conduct, violates federal law, is unconstitutional on its face, or that it was "promulgated with deliberate indifference to the 'known or obvious

consequences' that constitutional violations would result" so as to warrant *Monell* liability. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

### *1. Plaintiffs Have Not Shown the Official Policy is Unconstitutional on its Face.*

— Plaintiffs have not alleged facts sufficient to show the DISD Student Code of Conduct is unconstitutional or violates federal law on its face. The only allegation in their Second Amended Complaint regarding the relationship of the Student Code of Conduct and federal law is as follows: "Applicable Federal regulations allow (but do not require) school districts to consider any unique circumstances on a case-by-case basis when determining whether a change in placement is appropriate for a child with a disability who violates a code of student conduct," whereas "[t]he DISD Student Code of Conduct does not contain any similar provision which specifically allows for consideration of any unique circumstances on a case-by-case basis." Pls.' Second Am. Compl. ¶ 38–39. They assert that "the application of the DISD's *official* policy took no consideration of the unique and potentially deadly circumstances in this case," resulting in the ARD Committee's decision not to change the classroom placement of the Student. Pls.' Second Am. Compl. ¶¶ 40–41. Plaintiffs characterize DISD's policy as follows: "As long as a special education student's violent conduct is related to or a manifestation of their disability, the student will not be disciplined and will be allowed to remain in the presence of students and teachers regardless of any concern for the safety of other people." Pls.' Second Am. Compl. ¶ 85.

DISD rejects Plaintiffs' characterization of their policy and argues that the Student Code of Conduct is both constitutional and compliant with federal regulations. Def.'s Br. 10. In support of their argument, DISD points to provisions of the Student Code of Conduct

for 2020–2021,³ which states that if the student's conduct is determined to be a manifestation of the student's disability, except under "special circumstances," which are listed in the Student Code of Conduct and mirror the special circumstances outlined in 34 C.F.R. § 300.530(g), "the ARD committee shall return the student to the placement from which the student was removed, unless the parent and the district agree to a change in placement as part of the modification of the [Behavioral Intervention Plan]." Def.'s App. 012–13 [19] (citing 20 U.S.C. § 1415(k)(1)(F); 34 C.F.R. § 300.530(f)). Moreover, DISD highlights that the Student Code of Conduct cites to applicable federal regulations and includes a provision specifying that "[t]he discipline of students with disabilities is subject to applicable state and federal law in addition to the *Student Code of Conduct*. To the extent any conflict exists, the District shall comply with federal law." Def.'s App. 012.

In their response, Plaintiffs admit that DISD's policy is "patterned in large part upon federal regulation," but contend that the Student Code of Conduct does not follow federal law because it does not expressly reference, or include a provision mirroring, 34 C.F.R. § 300.530(a),⁴ which states that school officials "may consider any unique circumstance on

---

³ In considering DISD's motion to dismiss, the Court considers DISD's Student Code of Conduct for the 2020–2021, 2021–2022, and 2022–2023 school years, respectively, attached in DISD's appendix to its motion to dismiss [19]. The documents are central to Plaintiffs' claim and are referenced, but not attached to, Plaintiffs' Second Amended Complaint. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)) ("The court may . . . also consider '[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim.'").
⁴ In their complaint, Plaintiffs allege that a federal regulation allows for a case-by-case determination that is allegedly omitted from the Student Code. Plaintiffs' response brief specifies the federal regulation that Plaintiffs allege DISD omitted from the Student Code: 34 C.F.R. § 300.530(a). *See* Pls.' Resp. Br. 5. But the Court declines to consider any

a case-by-case basis when determining whether a change in placement . . . is appropriate for a child with a disability who violated a code of student conduct." Pls.' Resp. Br. 5–7 [20]; 34 C.F.R. § 300.530(a).  Even taking the allegations contained in the complaint as true, that DISD's policy does not include a provision expressly authorizing school officials to use considerations that are allowed, but not required, by federal regulations does not itself show that the DISD policy violates federal law or is unconstitutional.  This is especially so when considering the text of the Student Code of Conduct stating that DISD's policy is to follow applicable federal law if any conflict exists between it and the Student Code of Conduct.  Moreover, Plaintiffs' only allegations regarding the constitutionality of the Student Code of Conduct are conclusory statements and descriptions such as "constitutional deficiencies in the DISD policy," "unconstitutional and dangerous policy," and "dangerous and unconstitutional policies."  Pls.' Second Am. Compl ¶¶ 97, 104, 103.  Conclusory allegations, without facts to support them, are not accepted as true for the purposes of deciding a motion to dismiss.  *Ferrer,* 484 F.3d at 780.

***2. Plaintiffs Have Not Shown the Official Policy was Promulgated with Deliberate Indifference***. — Plaintiffs have not pled facts sufficient to show the DISD Student Code of Conduct was promulgated with deliberate indifference to the known consequence of violations of constitutional rights.  See Piotrowski, 237 F.3d at 578; Johnson, 379 F.3d at 309.  Deliberate indifference for the purpose of Monell liability is a "stringent test, and 'a

---

allegations not included in the complaint.  *See Sunderland v. Chavez*, 2023 WL 2185713, at *5 n.5 (N.D. Tex. 2023) ("A party cannot supplement his pleadings in his response to a motion to dismiss.").

showing of simple or even heightened negligence will not suffice' to prove municipal culpability." Piotrowski, 237 F.3d at 579 (quoting Brown, 520 U.S. at 407). Deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violation." Johnson, 379 F.3d at 309 (quoting Burge, 336 F.3d at 370).

*Monell* liability requires a showing of deliberate indifference on the part of the municipality's policymakers. *See Johnson*, 379 F.3d at 309. In their complaint, Plaintiffs' allegations of deliberate indifference focus primarily on the decisions of the ARD Committee rather than the relevant policymaker, the DISD Board. The complaint states that "[t]he ARD Committee, in accordance with DISD policy, acted with deliberate indifference in that they knew the Student had shown physical aggression toward two teaching assistants since the beginning of the school year, one of which was Ms. Sims," when making their October 20, 2020, decision not to remove the Student from Sims' classroom. Pls.' Second Am. Compl. ¶ 60. The actions of the ARD Committee in this case do not establish deliberate indifference of a DISD policymaker. Under Texas law, the policymaker of DISD is the Board of Trustees, and Plaintiffs have not identified a state or local law permitting the Board to delegate official policymaking authority to the Committee. *See A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1000 (S.D. Tex. 2014) ("But missing from plaintiffs' complaint is any cite to state or local law permitting HISD's Board of Trustees to delegate final policymaking authority to the identified School Officials."). Nor have Plaintiffs alleged facts showing that DISD delegated such power, as the ability to implement decisions does not constitute official policymaking authority. *Rivera v. Houston I.S.D.*, 349 F.3d 244, 248 (5th Cir. 2003) (distinguishing decision-

making authority from final policymaking authority). Thus, the ARD Committee is not a policymaker for *Monell* purposes, and its actions taken in accordance with DISD policy do not show that the DISD Board promulgated the policy with deliberate indifference.

Additionally, Plaintiffs allege no facts relating to any prior similar incidents or violations to demonstrate that the promulgation of the Student Code of Conduct's policy regarding discipline of special education students constituted deliberate indifference of the DISD Board. Plaintiffs cite to only one incident involving a student with a history of aggressive behavior that took place after Sims' incident, Pls.' Am. Compl. ¶¶ 98–103, which is insufficient to establish that the DISD Board knew or should have known that the Student Code of Conduct would likely lead to constitutional violations. *See Burge*, 336 F.3d at 370 (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir.2001)) ("[D]eliberate indifference generally requires that a plaintiff demonstrate 'at least a pattern of similar violations' . . . ."). In sum, Plaintiffs do not allege facts that, taken as true, establish that the DISD Board promulgated the Student Code of Conduct with deliberate indifference to the known or obvious consequence of constitutional violations.

Plaintiffs argue, in their response, that "DISD intentionally and deliberately did not include subsection (a) from 34 C.F.R. § 300.530 in the *Student Code of Conduct* . . . to maintain an easily applicable, uniform policy across the DISD for the alternative placement of special education students who exhibited violent or aggressive behavior . . . ." Pls.' Resp. Br. 8. Plaintiffs similarly contend that "DISD knew full well that unique circumstances would arise and they did" in this Student's case but omitted this section from the Student Code of Conduct anyway. Pls.' Resp. Br. 9. However, the Complaint contains no

MEMORANDUM OPINION & ORDER – PAGE 11

allegation that the DISD Board intentionally omitted a provision mirroring 34 C.F.R. § 300.530(a) from the Student Code of Conduct with knowledge constitutional violations would likely result. Indeed, in their response, Plaintiffs fail to cite to any facts or allegations in their Complaint to support this contention. The Court declines to consider any allegations not included in the complaint. *See Sunderland v. Chavez*, 2023 WL 2185713, at *5 n.5 (N.D. Tex. 2023) ("A party cannot supplement his pleadings in his response to a motion to dismiss.").

For the reasons stated above, even taking all of Plaintiffs well-pled allegations as true, Plaintiffs have failed to state a claim for *Monell* liability. Because Plaintiffs have not shown that the DISD Board's official policy, the Student Code of Conduct, is unconstitutional on its face or promulgated with deliberate indifference to obvious consequence of constitutional violations, the Court will not address whether Plaintiffs have sufficiently alleged that the DISD policy was the moving force behind any alleged violation of Sims' constitutional rights.

### D. Plaintiffs Have Not Shown Ratification

Section 1983 plaintiffs may also establish entity liability under the ratification theory. If "the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality." *Torres v. City of Houston*, 2012 WL 6554157, at *3 (S.D. Tex. 2012) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Under the ratification theory, a plaintiff must allege that the official policymaker "affirmatively approved both a subordinate's decision *and* the unconstitutional basis for it." *Torres*, 2012 WL 6554157, at *3 (emphasis in original)

MEMORANDUM OPINION & ORDER – PAGE 12

(citing *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755–56 (5th Cir. 2009)).  "A policymaker must have actual knowledge of the improper basis for the subordinate's action and yet approve the action anyway."  *Hunter v. City of Houston*, 564 F. Supp. 3d 517, 531 (S.D. Tex. 2021) (citing *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001)).  The Fifth Circuit has "limited the theory of ratification to 'extreme factual situations.'"  *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).

In their Second Amended Complaint, Plaintiffs allege that the October 2020 ARD Committee decision to keep the Student in the same classroom setting was unconstitutional because it allegedly violated Sims' constitutional right to bodily integrity, Pls.' Second Am. Compl. ¶ 111, and that DISD ratified the ARD Committee's October 2020 decision when it approved subsequent publications of the Student Code of Conduct without changing the provisions regarding disciplinary actions of special education students the ARD Committee relied on.  Pls.' Second Am. Compl. ¶¶ 106–09.  To state a claim based on a ratification theory of liability on this basis, Plaintiffs must allege facts plausibly establishing that the ARD Committee's October 2020 decision had an unconstitutional basis, which DISD Board had knowledge of, and subsequently approved of.  Plaintiffs have not alleged such facts.  Even if the re-promulgation of the Student Code of Conduct without change constituted an affirmative action of the DISD Board ratifying the ARD Committee's decision to follow the policy, Plaintiffs have not alleged facts that, if true, would show that the ARD Committee's decision had an unconstitutional basis.  Plaintiffs allege that the ARD Committee's decision was based on constraints of the DISD Student

Code of Conduct. Pls.' Second Am. Compl. ¶ 57 (stating that "the Committee affirmatively placed Ms. Sims in a position of danger in accordance with DISD policy"). As discussed above, in Section III.C, *supra*, Plaintiffs have not pled facts sufficient to establish that the Student Code of Conduct is unconstitutional. Accordingly, Plaintiffs have not stated a plausible claim for entity liability under the ratification theory.

## CONCLUSION

Because Plaintiffs have not stated facts sufficient to establish entity liability, the Court grants DISD's motion to dismiss. Plaintiffs have had several opportunities to plead facts sufficient to state a claim for relief under Rule 12(b)(6) in their Original Complaint [1], First Amended Complaint [8], and in their Second Amended Complaint [17] after being apprised of the pleading deficiencies raised in DISD's motion to dismiss Plaintiffs' First Amended Complaint [12]. Because Plaintiffs have again failed to plead facts sufficient to state a claim, the Court denies leave to file a fourth complaint, and will by separate judgment, dismiss Plaintiffs' claims against DISD with prejudice.

Signed February 7, 2024.

_David C. Godbey_
David C. Godbey
Chief United States District Judge